H. SCHERER & CO. *v.* INDEPENDENT STEEL & WIRE CO.

1. EVIDENCE—HEARSAY—CONTRACTS.
     Testimony being introduced that a witness found the goods received to be defective, in an action for breach of contract for the sale of springs, which the purchaser claimed were imperfect, an objection that the defective condition was shown by hearsay testimony concerning complaints of customers is not maintainable.

2. STATUTE OF FRAUDS—MODIFICATION OF CONTRACT—SALES.
     The objections that a contract within the statute of frauds may be modified only by writing, and that the defendant, who was alleged to have furnished defective springs and an insufficient quantity under the contract relied on, was entitled to additional time under the agreement, were *held* to be met by testimony showing that the defendant acknowledged the defective condition of the materials, advised plaintiff to purchase elsewhere and charge the loss to defendant, and assented to charges so made.

Error to Wayne; Donovan, J. Submitted April 18, 1910. (Docket No. 52.) Decided July 14, 1910.

Assumpsit by H. Scherer & Company against the Independent Steel & Wire Company for breach of a contract for the sale of certain springs. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*H. M. & D. B. Duffield*, for appellant.

*Bowen, Douglas & Eaman*, for appellee.

MOORE, J. The plaintiff sued and recovered a judgment upon a contract for the furnishing of wagon springs. The plaintiff claimed damages on two grounds under the contract set out in the declaration:

(1) Because some of the springs furnished by the defendant company were defective, and had to be replaced by others; and,

(2) Because, the defendant, failing to furnish the number of springs called for by the contract, the plaintiff was thereby compelled to purchase elsewhere, at a price in excess of that fixed by the contract, which excess is the basis of a claim for damages.

The case was tried before a jury. From a judgment in favor of plaintiff, the case is brought here by writ of error.

Defendant claims the theory on which the trial judge permitted the case to be tried was a denial of justice, for the following reasons:

(1) He permitted alleged defects to be proved by the mere statement of a witness referring to complaints from customers, and in no way specifying wherein the springs did not come up to the kind required under the contract.

(2) Because, the principal contract being one which the statute of frauds requires to be in writing, all modifications of such contract must also be in writing.

(3) The contract gave to the defendant additional time within which to perform its obligations under certain conditions which the testimony or the offer of testimony showed did exist. It became, therefore, a matter of considerable variation, and a matter of much moment to the defendant whether it would accept the right to delay given under the contract, or whether it would, at additional ex-

pense to itself, waive that right in order that the plaintiff might sooner receive its supplies.

We think each of these contentions was fully met by the testimony offered on the part of the plaintiff.

We will call attention to some of the testimony.  Mr. Hoof, who made the contract on the part of the plaintiff with Mr. Hirsch representing the defendant, testified in part as follows:

" I made up the entire bill of particulars, and access is given to all of our books, and I am familiar with all the facts with reference to all these purchases by the customers, and in each case the difference between the contract price and the market price actually paid.

"Q. Now you may state the total amount you paid as indicated by the bill of particulars in excess of contract price to fill the orders of customers of H. Scherer & Co. of the kind of springs specified in the contract with the defendant under their direction.

"A. The total amount of these charges is $782.29, and from that amount is to be deducted for defective springs $164.07, leaving a balance of $618.22.  This indicates the amount charged because of difference in price.  In each one of these instances mentioned in this bill of particulars, I notified the Independent Steel & Wire Co. of the sale and purchase.  They probably furnished us 2,000 pairs of springs, which did not come up to quality.  Apparently when making them the steel was overheated, which took the temper out, and when they were tested the seat spring would not spring back to the proper position by one or two inches, sometimes three or four.  They were poorly constructed.  *  *  *

"Q. I will ask you, did you, with reference to each one of these items in the bill of particulars, have defective springs furnished by the Independent to you on which you are claiming a refund of the money paid by you to the Independent?  Did you call Mr. Hirsch's attention to it orally or in conversation?

"A. Yes, sir; orally.  We called his attention to it, and he authorized them to be returned to their factory, and he promised to credit us on account with that money.  Mr. Hirsch promised to pay back the amount which we claimed in the bill of particulars as a credit for defective springs returned.  The defective springs in the bill of par-

ticulars amount to $236.22. Our total claim is $782.29, deducting from which $236.22, for defective springs, leaves $546.07 as representing the amount we paid in excess of the contract price."

This witness testified that he saw many of the springs which his company had sold to its customers which proved to be defective and had been returned to the defendant company at Chicago; that he examined and tested them; and that he examined many of them in the presence of Mr. Hirsch or Mr. Guiney, and that the springs were defective and were admitted to be. He further testified:

"I presented personally to Mr. Hirsch a memorandum or statement of defective springs, and then again would send him an invoice of every charge. He stated that if the springs were defective he would make the full allowance for them, and he was satisfied they were defective because they had been getting out a bad lot of springs, and the customers were justified in their complaints. We. presented to Mr. Hirsch a full statement of the springs shipped on their authority from other factories to our customers, and in each instance we made an invoice to the customer. * * * We sent invoices to Mr. Hirsch in every case for the difference in price as fast as the invoices would come from other factories upon these orders and which he had authorized us to purchase outside. We afterwards had a talk with him about the amount of these items, discussing the price we were paying, and he said it was all right and that he could not make them; to go on and fill the orders and charge him with the difference in price. There was no objection whatever made to this. The only item they disputed was the freight on one or two little shipments to California. They said they would allow for the springs but said they did not feel they wanted to allow all the freight. This freight is not involved in this controversy. The total amount of interest due us is $150.22. The principal is $782.29, and the interest $150.22."

The case was carefully presented to the jury.

Judgment is affirmed.

OSTRANDER, HOOKER, BLAIR, and STONE, JJ., concurred.